Hon. John C. Coughenour
Note for Consideration:  December 6, 2013

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WENDY JENDRYSIK,

                Plaintiff,

v.

RECEIVABLES PERFORMANCE
MANAGEMENT, LLC

             Defendant.

Case No.  2:13-cv-00559

**DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
DISMISSING TCPA AND
WASHINGTON CONSUMER
PROTECTION ACT CLAIMS**

**ORAL ARGUMENT REQUESTED**

## I.  INTRODUCTION

Defendant Receivables Performance Management, LLC ("RPM") is a third party consumer and commercial debt collection agency.  Its clients hire it to collect original debt or debts which the clients purchase from credit originators.  One of RPM's clients is Verizon Wireless.  This case arises out of RPM's attempts to collect a $400 Verizon wireless bill.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 1
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

Plaintiff disputed this bill.  She has brought this action alleging that defendant's collection efforts violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et. seq. (FAC - Claims I-III), the Telephone Consumer Protection Act, 47 U.S.C. §227 (FAC - Claim IV) and the Washington Consumer Protection Act, Title 19.86 RCW (FAC - Claim V).

## II.    RELIEF REQUESTED

Defendant Receivables Performance Management, LLC ("RPM") seeks dismissal of the Plaintiff's TCPA Claim (Claim IV) because it did not use an automatic telephone dialing system when it called plaintiff.

Further, RPM asks the court to dismiss the Washington Consumer Protection Act ("WCPA") claim (Claim V) because Plaintiff has not alleged, and does not seek, damages which are compensable under the Washington Consumer Protection Act.  Under the WCPA, compensable damages are limited to damages to "business or property."  It excludes statutory damages and damages for personal injury.  Plaintiff has not alleged, or presented, any evidence of damages to her business or property.

## III.    EVIDENCE ON WHICH MOTION IS BASED

RPM bases its motion on the Declarations of James Noble, Chris Vittoz and Andrew D. Shafer, RPM's counsel of record.

## IV.    ARGUMENT

### A.    SUMMARY JUDGMENT DISMISSING CLAIMS IV AND V IS APPROPRIATE.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a).

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 2
 [Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

1  When considering motions for summary judgment, the court must draw all reasonable
2  inferences from the admissible evidence in the light most favorable to the non-moving party.
3  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  The moving party must
4  initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477
5  U.S. 317, 323 (1986).

6  Once a defendant satisfies its threshold burden, the plaintiff must come forward with
7  admissible evidence demonstrating issues of material fact, which, if resolved in Plaintiff's
8  favor at trial, would support a judgment of liability.  *See, Matsushita Elect. Indus. Co. v.*
9  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) and *Intel Corp. v. Hartford Accident & Indem.*
10 *Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in resolving
11 purely legal questions.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir.
12 1999).

13 For the reasons stated below, this matter is ripe for summary judgment dismissing
14 Claims IV and V.

15 **B.     RPM DOES NOT EMPLOY AN AUTOMATIC TELEPHONE**
16 **        DIALING SYSTEM.**

17 **1.      RPM's Dialer Does Not Contain a Sequential or Random Number**
18 **        Generator.  It Does Not Have the Capacity to Dial Numbers Randomly**
   **        or Sequentially.  It is Not an ATDS.**

19 **a.   The Statutory Framework of the TCPA.**

20 The Telephone Consumer Protection Act, 47 U.S.C. §227, prohibits certain conduct
21 by telemarketers.  As it applies here, the TCPA makes it unlawful,

22     (A) to make any call (other than a call made for emergency purposes or made
23     with the prior express consent of the called party) *using any automatic*
       *telephone dialing system* or an artificial or prerecorded voice--
24

25 DEFENDANT'S MOTION FOR SUMMARY
   JUDGMENT DISMISSING FOURTH AND FIFTH
   CLAIMS FOR RELIEF- 3
   [Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

1

2

> (iii) to any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

3

47 U.S.C. §227(b)(1)(A), (Emphasis added).

4

5

6

7

8

9

Claim IV alleges that RPM violated the TCPA by using an automatic telephone dialing system to call Plaintiff on her cell phone.  Plaintiff does not allege RPM left a message using an artificial or prerecorded voice message.  Thus, the only issue before the court is whether RPM's equipment falls within the TCPA's definition of an "*automatic telephone dialing system"* (ATDS).

10

11

An ATDS is a defined term in the TCPA.  47 U.S.C. §227(a)(1) defines an ATDS as follows:

12

(a) Definitions:  As used in this section--

13

14

> (1) The term "automatic telephone dialing system" means equipment which has the *capacity*--

15

>> (A) to store or produce telephone numbers to be called, *using a random or sequential number generator*; and

16

>> (B) to dial such numbers.

17

(Emphasis added)

18

19

The Federal Communications Commission has adopted this definition in its regulations.  47 C.F.R. 64.1200(f)(2) defines an ATDS as follows,

20

21

22

> The terms *automatic telephone dialing system* and *autodialer* mean equipment which has the capacity to store or produce telephone numbers to be called *using a random or sequential number generator* and to dial such numbers. (Emphasis added)

23

24

Plaintiff bears the burden of proving that the RPM system meets the statutory definition of an ATDS.  To do so, she must prove:  (1) that the system has the *capacity* to

25

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 4
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

(2) *store or produce* numbers to be called *randomly or sequentially* (3) using a *random or sequential number generator* and (4) the system in fact dials such numbers.  *Satterfield v. Simon & Schuster*, 569 F.3d 946 (9th Cir. 2009).

The question before the court is whether a system which lacks a random or sequential number generator can *ever* meet the statutory definition of an ATDS.  For the stated reasons below, RPM submits that the answer to this question is "no."[1]

**b.     Under the Law of This Circuit, RPM's System is Not an ATDS.**

Ninth Circuit authority supports dismissal of Claim IV.  In *Satterfield v. Simon & Schuster, Inc*., Id*.,* the Court reviewed an order granting summary judgment dismissing the complaint.  The district court concluded that because Simon and Schuster's dialing system did not have a random or sequential number generator, it was not an ATDS for TCPA purposes.  The court did not look to the FCC's rules or declaratory orders for guidance.  Instead, it relied on the explicit statutory definition of an ATDS.  At page 951, the court ruled,

> [I]n construing the provisions of a statute, we first look to the language of the statute to determine whether it has a plain meaning. . . . Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous [citation omitted].  Reviewing this statute, we conclude that the statutory text is clear and unambiguous." Id. at 951.

The court accepted Simon and Schuster's proposition that a telephone dialing system is only an ATDS if it contains a number generator.  The court reversed the trial court's order granting summary judgment of dismissal *only* because it found conflicting evidence

---

[1] In *Stockwell v.Credit Management, LP*, the Superior Court of California for Orange County, Cause No. 30-2012-00596110-CU-NP-CXC (Shafer Declaration Exhibit 1)

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 5
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

whether Simon & Shuster's telephone equipment contained a random or sequential number generator.  Id. at 951.

However, the court did not stray from Congress' unambiguous definition.  Instead, it remanded the case to the district court for trial on the issue of whether defendant's system contained a random or sequential number generator.  This court should follow *Satterfield* and conclude, based on undisputed evidence of record,[2] that the absence of a number generator in the RPM system is fatal to the TCPA claim.

In *Meyers v. Portfolio Recovery Services, Inc.,* 707 F.3d 1036 (9th Cir 2012), the Ninth Circuit again visited the definition of an ATDS.  There, while the defendant denied its system had the present capacity falling within the ATDS definition, evidence demonstrated the contrary.  At 1043, the Court observed,

> PRA's securities filing shows that PRA uses predictive dialers. *PRA does not dispute that its predictive dialers have the capacity described in the TCPA.* This is sufficient to determine that PRA used an automatic telephone dialing system. See id. ("[A] system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it."). (Emphasis added)

*Meyers v Portfolio Recovery Services* is not contrary to *Satterfield*.  In *Meyers*, the defendant conceded its dialing system fell within the ATDS definition because it had the capacity to perform the functions described in the statute, as the court concluded.  The only issue the court addressed was whether the TCPA applied if the defendant did not actually employ its system's capacity to dial numbers automatically.  In short, the court never addressed the question of whether the absence of a number generator was fatal to the claim because PRS never raised the issue.  To the contrary, the court recognized that a random or

---

[2] Declaration of James Noble, Paragraph 7.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSING FOURTH AND FIFTH CLAIMS FOR RELIEF- 6
[Case No.  2:13-cv-00559]

SIMBURG, KETTER, SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

sequential number generator continued to be an indispensable element of the ATDS definition.

*Blair v. CBE Group, Inc.* __ F.Supp. 2d __, 2013 WL 2029155 (S.D. Cal. 2013), follows *Satterfield*. In *Blair,* the district court required proof of the existence of a random or sequential number generator to satisfy the FCC's ATDS definition. There, the court denied CBE's 12(b)(6) motion to dismiss based on a proffered declaration of CBE's general counsel, who submitted an affidavit in which he testified that CBE's equipment did not contain a random or sequential number generator.

In declining to convert the motion to dismiss into a motion for summary judgment, the court first dismissed as incompetent the general counsel's testimony,[3] then concluded, "Whether CBE Group's calling technology has the requisite capacity for TCPA purposes is a factual question." Slip Op. 4.

Here, RPM disclosed Noble Systems as a potential witness who would testify as to its product's capabilities in paragraph 3 to its Fed.R.Civ.P 26(a) Initial Disclosure.[4] RPM served its Initial Disclosures on September 6, 2013. Notwithstanding this early disclosure, Plaintiff has taken no action as of this date to contest Noble's assertion.[5]

See also, *Ibey v. Taco Bell Corp.*, 2012 WL 2401972 at Slip Op 4 (S.D. Cal. 2012), [an ATDS under the statute must have the capacity to store or produce telephone numbers to be sent text messages and use a random or sequential number generator to text the numbers] and *Emanuel v. Los Angeles Lakers*, 2013 WL 1719035 at Slip Op 2 (C.D. Cal. 2013) ["[A] system need not actually store, produce, or call randomly or sequentially

---

[3] The court concluded that the general counsel did not have the technical expertise to offer this testimony.
[4] Shafer Declaration, Exhibit 2
[5] Shafer Declaration, ¶7

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 7
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

generated numbers, it need only have the capacity to do it."].  As is plain, the Ninth Circuit, and district court cases which have addressed the issue, all hold that a random or sequential number generator is indispensable to proving the TCPA claim.

No issues of material fact are present in this case.  James Noble, the founder and president of the company which supplies RPM's telephone dialing system has testified that the system that RPM currently employs, and the one which it has employed at all times relevant to this suit, lacks a random or sequential number generator program.[6]  The system, therefore, lacks the capacity to generate numbers randomly or sequentially and to dial them.  It is not an ATDS.  James Noble's testimony is uncontroverted.

Since RPM's equipment does not satisfy the statutory definition of an ATDS, as a matter of law, the court must find that RPM has not violated the TCPA.  As such, Court should dismiss the plaintiff's fourth claim with prejudice.

### c.   Under Rules of Statutory Construction, RPM's System is not an ATDS.

Apart from, and in addition to, the controlling law as stated above, under rules of statutory construction, the requirement of a random or sequential number generator is indispensable to any dialing system satisfying the ATDS definition.

Under the "doctrine of last antecedent," where one phrase of a statute modifies another, the modifying phrase applies only to the phrase immediately preceding it. *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 832 (9th Cir. 1996).  In this case, the phrase, "to store or produce telephone numbers to be called" is the phrase immediately preceding, "using a random or sequential number generator."

---

[6] Declaration of James Noble, Paragraph 7

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 8
 [Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

Had Congress intended the phrase "using a random or sequential number generator" to modify only the phrase "produce telephone numbers," it could readily have done so by structuring the definition in a way that the phrase, "to produce telephone numbers," stood by itself as the last antecedent phrase before the "number generator" phrase. For example, it could have been set off in a separately lettered paragraph. Accordingly, calling numbers that are "stored or produced by equipment" does not violate the statute unless those numbers are stored or produced using a random or sequential number generator.

The Ninth Circuit applied this rule of construction in *United States v. One Sentinel Arms Striker-12 Shotgun Serial No. 001725*, 416 F.3d 977, 979 (9th Cir. 2005), an *in rem* action resulting in the forefeiture of a prohibited firearm. That case addressed the meaning of a phrase in the National Firearms Act. At issue was the meaning of the term "destructive device." The NFA defined a 'destructive device' as, "any type of weapon by whatever name known …*except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes.*" The court held that the phrase "particularly suitable for sporting purposes" modified the phrase "shotgun or shot gun shell" rather than just the phrase "shotgun shell." The absence of any punctuation between the terms "shotgun" and "shot gun shell" made the entire phrase the last antecedent to the phrase "suitable for sporting purposes."

The way Congress constructed the ATDS definition demonstrates its intent that a "random or sequential number generator" was to be an indispensable component of an ATDS. Whether a system stores numbers, generates numbers or does both is not material *unless* the equipment contains a random or sequential number generator program. Hence, the absence of a random or sequential number generator is fatal to a TCPA claim. This is

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

1   what the Ninth Circuit ruled in both *Satterfield* and *Meyers*.  It is the rule of construction

2   that the courts in *Ibey* and *Los Angeles Lakers* followed.

3      **d.    Judicial Restraint Requires the Court to Apply an Unambiguous Statute
            as Congress Has Written It.**

4      While random and sequential dialing technology may now be obsolete, it is not the

5   province of this court, or any court, to re-write the statute for Congress.  That is precisely

6   what the court improperly did in *Griffith v. Consumer Portfolio Service*, 838 F.Supp.2d 723

7   (N.D. IL 2011).  In that TCPA/FDCPA action, at 725 the court first defined random and

8   sequential dialing as follows,

9
        As we understand these terms, "random number generation" means random
10       sequences of 10 digits, and "sequential number generation" means (for
         example) (111) 111–1111, (111) 111–1112, and so on. CPS's expert states that
11       early dialers operated in this fashion, calling every conceivable telephone
         number.
12
13      Once the Griffith court defined "random or sequential dialing," it did not end its

14   analysis, as it should have.  Instead, it deferred to a 2003 FCC ruling in which the

15   Commission held that a predictive dialer was a dialer falling within the ATDS definition.

16   See, *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of*

17   *1991,* 18 FCC Rcd. 14014, 14091–93 (July 3, 2003) (the "FCC 2003 Order").  This analysis

18   is contrary to the Ninth Circuit analysis in *Satterfield, supra* at 951 where the court stated,

19
        In construing the provisions of a statute, we first look to the language of the
20       statute to determine whether it has a plain meaning.  *McDonald v. Sun Oil
         Co.,* 548 F.3d 774, 780 (9th Cir.2008).  "The preeminent canon of statutory
21       interpretation requires us to presume that [the] legislature says in a statute
         what it means and means in a statute what it says there.  Thus, our inquiry
22       begins with the statutory text, and ends there as well if the text is
         unambiguous." *Id.* (quoting *BedRoc Ltd., LLC v. United States,* 541 U.S. 176,
23       183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (internal quotation marks
         omitted)).  Reviewing this statute, we conclude that the statutory text is clear
24       and unambiguous.

25   DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT DISMISSING FOURTH AND FIFTH
     CLAIMS FOR RELIEF- 10
      [Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

1
2

When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* "to store or produce telephone numbers to be called, using a random or sequential number generator."

3
4

In relying on the FCC's 2003 Order, the *Griffith* court included Consumer

5

Portfolio's predictive dialing system within the TCPA definition of an ATDS.  By so

6

doing, it ignored the part of the ATDS definition that requires evidence of a random or

7

sequential number generator.  The court failed to exercise any judicial restraint when it

8

dismissively concluded at 726,

9
10

According to CPS, to fall within the FCC's interpretation of an "automatic telephone dialing system" the equipment in question must have the technical ability to perform the now obsolete functions performed by dialers when Congress originally passed the TCPA.

11

Because the *Griffith* decision exceeded the boundaries of that court's powers, RPM

12

urges this court to reject the Griffith approach.  It is not the court's job to re-write statutes

13

that have become obsolete.  *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363,

14

369, 91 S. Ct. 1400, 1404, 28 L. Ed. 2d 822 (1971) ["it is for Congress, not this Court, to

15

rewrite the statute"].  See also, *Humanitarian Law Project v. Reno,* 205 F.3d 1130, 1137-38

16

(9th Cir. 2000) [court lacks power to re-write statute to pass constitutional muster].

17

**e.      Congress Never Intended the TCPA to Have the Broadest Reach.**

18

Finally, Congress never intended the TCPA to prohibit businesses from using dialers

19

to place non-telemarketing calls that deliver account-related information to their customers

20

and account holders.[7]  In 1992, the FCC engaged in rule-making to implement the TCPA.

21
22

---

23

[7] *See, e.g.*, 137 Cong. Rec. H11307-01 (1991) (describing the TCPA as allowing the FCC to exempt certain types of calls, including calls "to leave messages with consumers to call a debt collection agency to discuss

24

their student loan ...."); *id.* at H11312 ("Calls informing a costumer that a bill is overdue, or a previously unstocked item is now available at a store are clearly not burdensome, and should not be prohibited.").

25

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 11
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

1

The Commission correctly stated that certain non-telemarketing uses of dialers were

2

not intended to be prohibited by the TCPA.[8]  It confirmed that (1) Congress did not intend

3

that non-telemarketing use of a dialer be prohibited by the TCPA, and that (2) certain non-

4

telemarketing calls that are not made to randomly or sequentially generated telephone

5

numbers do not fall within the TCPA's ATDS restriction.  In its Order adopting rules to

6

implement the TCPA, the Commission determined that debt collection calls, for example

7

(which were not initiated by random or sequential dialing of phone numbers), did not fall

8

within the definition of ATDS.[9]

9

In 1995, the agency again confirmed that certain non-telemarketing calls were not

10

prohibited by the TCPA's ATDS restriction because they, "are not directed to randomly or

11

sequentially generated telephone numbers, but instead are directed to the specifically

12

programmed contact numbers...." [10]

13

14

15

16

17

18

19

[8]  *See Rules and Regulations Implementing Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, 7 FCC Rcd 2736 ¶ 15 (1992) ("1992 TCPA NPRM") (discussing the use of predictive dialers in the debt collection industry and noting the benefits of increased efficiency and better communication with the called party).

20

21

[9] See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 7 FCC Rcd 8752 ¶ 39 (1992) (explaining that debt collection calls are not subject to the FCC's identification rules for artificial or prerecorded messages "because such calls are not autodialer calls (i.e., dialed using a random or sequential number generator) ....").

22

23

24

[10] See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum Opinion and Order, 10 FCC Rcd 12391 ¶ 19 (1995) ("1995 TCPA Order") (discussing debt collection calls; emphasis added), citing Household International Petition for Reconsideration, CC Docket No. 92-90, at 6.

25

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 12
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

2.    **The Federal Communications Commission's 2003 Interpretative Ruling Does Not Apply in this Case.**

a.    **The FCC 2003 Order Does Not Mandate the Court Finding that RPM Uses an ATDS.**

When interpreting statutes, the place to begin is with the statutory language itself.  If that language is plain, then the Court must enforce it as written, giving due regard to all its words and parts.  *Satterfield v. Simon & Schuster, Inc.,* Id at 951.  The Court is not free to ignore words or to impart on the statute a meaning that is not within the statute.  *Mais v. Gulf Coast Collection Bureau, Inc.* __ F.Supp.2d __, 2013 WL 1899616 (S.D. Fla. 2013).

The Court is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.  See, *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 843, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984) [agency actions which go beyond the agency's delegated authority are not entitled to judicial deference.  Congress' failure to define the term "single source" in the Clean Air Act Amendments of 1977, left it to the EPA to enact a definition that was consistent with the CAA's purpose.  Such definition was entitled to judicial deference].  Where the statute is clear on its face, the court, as well as the agency, must apply the statute as Congress wrote it.  *Chevron,* 467 U.S. at 842-843, 104 S.Ct at 2781.  Where Congress has explicitly or implicitly left a gap, the agency is charged with promulgating reasonable regulations to execute Congress' intent.  *Id.,* 467 U.S. at 844-845, 104 S.Ct. at 2782.

This case requires the court to address the meaning of a term which Congress explicitly defined, "automatic telephone dialing system."  Congress clearly stated its intent that an ATDS must contain a random or sequential number generator to fit within the ATDS definition.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 13
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

1   Plaintiff may rely on a recent Florida decision for the proposition that this court
2   must defer to the FCC's 2003 Interpretative Order in which it defined "automatic
3   Telephone Dialing System" as including so-called predictive dialers.  By so doing,
4   plaintiff would be in error.  In *Mais v. Gulf Coast Collection Bureau, Inc.*, the court
5   ignored *Chevron's* limitation on judicial review of agency actions.  There, the court
6   disregarded the FCC 2003 Order in which the Commission defined a term not defined in
7   the TCPA ("prior express consent").

8   Here, in contrast, the court is reviewing a term Congress defined in the TCPA.  As
9   *Chevron* instructs, the FCC's departure from the TCPA in its 2003 Order (when it decreed
10  that so-called predictive dialers are within the ATDS definition) is not entitled to *Chevron*
11  deference.  This court need not defer to the FCC 2003 Order under *Chevron* because the
12  statute is plain on its face.  *Satterfield* at 951.  Here, the court is enforcing the statute, not
13  the Commission's erroneous interpretation of the statute.  As such, RPM respectfully
14  urges the court to apply the definition of an ATDS as Congress wrote it.  By so doing, the
15  absence of a random or sequential number generator is fatal to plaintiff's case.

16         b.      **The Court Has Jurisdiction to Apply the TCPA as Written.**

17  In *Mais*, the court did not decline jurisdiction under the Hobbs Act.[11] It held that the
18  Hobbs Act only vested the Court of Appeals with exclusive jurisdiction where a party
19  sought to, "enjoin, set aside, suspend (in whole or in part), or determine the validity of all
20  final orders of the Federal Communications Commission" made reviewable by section
21  402(a) of the Communications Act.  Where a party seeks damages for alleged TCPA
22  violations, it seeks relief outside the scope of the Hobbs Act's jurisdictional restrictions.
23
24
_____

[11] 28 U.S.C. §2342 confers exclusive jurisdiction to review agency orders on the Federal Courts of Appeal.

25  DEFENDANT'S MOTION FOR SUMMARY
    JUDGMENT DISMISSING FOURTH AND FIFTH
    CLAIMS FOR RELIEF- 14
    [Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

*Id.* at Slip Op 6.  In so finding, the *Mais* court concluded it had jurisdiction to interpret the TCPA in accordance with rules of statutory construction.  The court rejected the FCC's 2008 conclusion that a plaintiff could manifest "prior express consent" by his/her conduct.

*Mais'* Hobbs Act analysis is consistent with Ninth Circuit case law.  In each instance in which the Ninth Circuit has examined the limits of the Hobbs Act, the underlying case sought to "enjoin, set aside, suspend or determine the validity of" an FCC order or rule.  In each instance, because of the relief sought, the court found the Hobbs Act applicable.  See, e.g., *US West Communications, Inc. v. Jennings,* 304 F.3d 950 (9th Cir 2002) [Properly promulgated Federal Communications Commission (FCC) regulations in effect had to be presumed valid for purposes of appeal from district court's decision respecting challenges raised to interconnection agreements inasmuch as district court lacked jurisdiction to pass on validity of regulations];  *U.S. v. Dunifer,* 219 F.3d 1004 (9th Cir. 2000) [The Communications Act's jurisdictional limitations, under which any proceeding to enjoin, set aside, annul, or suspend any order of the Federal Communications Commission (FCC) generally must be brought in the Court of Appeals, apply as much as to affirmative defenses as to offensive claims, so that the exclusive jurisdiction of the Court of Appeals over rulemaking by the FCC may not be evaded by seeking to enjoin a final order of the FCC in the district court]; *Wilson v. A.H. Belo Corp.* 87 F.3d 393 (9th Cir. 1996) [FCC declaratory order, concluding that federal law preempted any state action dependent on any determination of lowest unit charge for political advertising on television under Communications Act, was subject to exclusive review of Court of Appeals]; *Sable Communications of California, Inc. v. F.C.C.,* 827 F.2d 640 (9th Cir. 1987) [Court of Appeals had exclusive jurisdiction over challenge to FCC regulation

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 15
  [Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

1    restricting sexually suggestive telephone services;  regulation could not be challenged in

2    action for declaratory and injunctive relief in district court].

3         In this case, RPM is not asking the court to pass on the validity or applicability of the

4    FCC 2003 Order.  Instead, it asks the court to simply apply the statute as Congress wrote it.

5    As the Hobbs Act's jurisdictional limitation was absent in *Mais*, so too is it absent here.

6         For the foregoing additional reason, the court should find that RPM's dialing system

7    is outside the definition of an ATDS, as 47 U.S.C.  227(a)(1)(A) and 47 C.F.R.

8    64.1200(f)(1) define that term.  Since RPM did not call Ms. Jendrysik using an automated

9    telephone dialing system, the court should dismiss the Fourth Claim for Relief.

10        **c.    <u>Satterfield is Consistent with the FCC 2003 Order.</u>**

11        In the FCC 2003 Order, the Commission attempted to clarify many aspects of the

12   TCPA, including the provision that addressed the definition of an ATDS.  It concluded that

13   "predictive dialers" were within the ATDS definition of 47 U.S.C. §227(a)(1)(A).   At

14   14091, the Commission defined a predictive dialer as follows,

15

16        [A] predictive dialer is equipment that dials numbers *and*, when certain
         computer software is attached, also assists telemarketers in predicting when a
17       sales agent will be available to take calls. The hardware, when paired with
         certain software, has the capacity to store or produce numbers and dial those
18       numbers at random, in sequential order, or from a database of
         numbers….telemarketers program the numbers to be called into the
19       equipment, and the dialer calls them at a rate to ensure that when a consumer
         answers the phone, a sales person is available to take the call. The principal
20       feature of predictive dialing software is a timing function, not number storage
         or generation.

21

22        This court need not inquire whether the FCC exceeded its authority in its 2003

23   Order.  Simply, the Commission did not dispense with the requirement of a sequential or

24

25   DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT DISMISSING FOURTH AND FIFTH
     CLAIMS FOR RELIEF- 16
      [Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

random number generator.   In fact, the Commission's definition, plainly requires the presence of a number generator.   47 C.F.R. 64.1200(f)(2), see, *supra* at 4.

Even assuming, for the limited purpose of this motion, that RPM employs a system with a predictive dialing capability, that is not enough to categorize the system as an ATDS since the system lacks a component indispensable to the TCPA definition of an ATDS – a random or sequential number generator.   The record is undisputed on this central issue. Accordingly, the court must find, as a matter of law, that the RPM system is not an Automatic Telephone Dialing System. *See*, *Pincay v. Andrews*, 238 F.3d 1106 at 1109 (9th Cir. 2001) [If reasonable minds cannot differ about whether the plaintiff had constructive notice of its injuries, defendants are entitled to judgment as a matter of law].

Upon finding that the system is not an ATDS, the court must dismiss the fourth claim because Plaintiff has not been able to, and will not be able to, satisfy this indispensable element of proof of her claim.

## C.   THE CONSUMER PROTECTION ACT DOES NOT APPLY.
## DEFENDANT IS ENTITLED TO JUDGMENT DISMISSING CLAIM V

Plaintiff's Fifth Claim alleges a violation of the Consumer Protection Act based upon alleged violations of specific provisions of the Washington Collection Agency Act ("WCCA").   In particular, Plaintiff alleges that RPM violated RCW 19.16.250(13) [engaging in conduct which had the effect of harassing, intimidating, threatening and embarrassing her]  and RCW 19.16.250(18) [calling a cellular telephone more than twice in a day when the caller knows, or should know, it is calling a cell phone].

The WCCA incorporates by reference the WCPA.  RCW 19.16.440 states,

[T]he commission of any act or practice prohibited by RCW 19.16.250 are declared to be unfair acts or practices or unfair methods of competition in the

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 17
 [Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

conduct of trade or commerce for purposes of the application of the Consumer Protection Act found in chapter 19.86 RCW.

The Fair Debt Collection Practices Act allows a prevailing plaintiff to recover actual damages, *statutory damages* up to $1,000 per action, costs of suit and reasonable attorney's fees. The WCAA is unlike the FDCPA. Where the FDCPA contains a damages provision, 15 U.S.C. §1692k(a)(1), the WCAA does not. Instead, any damages must be recoverable under the CPA. As stated above, those damages are limited to injury to property or business.

The CPA has five elements (including proof that the complained of activity is an unfair act or practice affecting the public interest). If a collection agency violates the WCCA, those violations satisfy proof of three elements of the WCPA. However, Plaintiff must still prove that the unfair act or practice has caused *damage* to her *business or property*. RCW 19.86.090. Plaintiffs evidence misses this mark.

Here, the plaintiff alleges statutory damages from the alleged TCPA violation, statutory damages under the FDCPA and actual damages for personal injury including, "severe aggravation and emotional distress, digestive disorder, insomnia and exacerbation of her fibromyalgia condition"[12] arising from RPM's collection practices. In addition to the allegations in the FAC, the plaintiff has limited her damages arising from this claim in her Initial Disclosure Statement,[13] which constitutes an admission that she has suffered no harm to her "property or business." Even in her responses to discovery, Plaintiff has failed to identify any actual damages to her "property or business." Request for Production 6[14] asks her to produce,

---

[12] FAC, Paragraph 54, Dkt #12, at page 12.
[13] Shafer Declaration, Exhibit 3
[14] See, Shafer Declaration, Exhibit 4 for the request for production and response.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 18
    [Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

1
2
> All documents on which you tend [sic] to rely to establish actual damages arising from Defendant's alleged violation of the Fair Debt Collection Practices Act.

3
> Plaintiff's evasive response tells all.  She responded as follows,

4
5
> All documents produced by either party in discovery.  Plaintiff reserves the right to supplement her answer to this interrogatory [sic] as her investigation proceeds.

6
7
8
9
10
11
12
Even assuming the plaintiff can prove all of the facts alleged in the complaint, she has failed to state a claim for relief under the CPA.  A personal injury claim is not a compensable "injury to business or property" under the CPA.  *Moritz v. Daniel N. Gordon, P.C.*, 895 F.Supp.2d 1097 (W.D. Wash. 2012) [in an FDCPA action against an attorney debt collector, personal injuries arising from harassment and emotional distress are not "injuries to property or business."  Without evidence of damages to business or property, the court dismissed the plaintiff's CPA claim].

13
14
15
16
The court is advised that *Moritz* was an FDCPA claim in which statutory damages were also sought.  Nonetheless, the court dismissed the WCPA claim because statutory damages under FDCPA does not satisfy the damage to "property or business" element of the WCPA.

17
18
19
20
Since the statutory damages available under the TCPA and the FDCPA are not intended to compensate the plaintiff for injury to business or property, they are not compensable damages under the CPA either.

21
22
In like manner, failure to show actual monetary damages precludes recovery of treble damages under the Consumer Protection Act (CPA).   *Sign-O-Lite Signs, Inc. v.*

23
24
25
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 19
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

*DeLaurenti Florists, Inc.* 64 Wn. App. 553, 825 P.2d 714, (1992) reconsideration denied, review denied 120 Wn.2d 1002, 838 P.2d 1143.[15]

The Plaintiff has not alleged any injury or damage to her business or her property. Apart from her claim for personal injury damages, her sole prayer for relief is for statutory damages, costs of suit and reasonable attorney's fees under 15 U.S.C. 1962k(a)(1).[16]  In the total absence of any evidence (or even an allegation) of actual harm compensable under the WCPA, the plaintiff has failed to state a claim for relief under the CPA.  Accordingly, the court must dismiss the Fifth Claim for Relief.

## V.   CONCLUSION

The Court should dismiss the Fourth Claim for Relief based on Defendant RPM's alleged violations of the TCPA because the uncontroverted evidence demonstrates that RPM's phone system does not contain a random or sequential number generator.  It does *have the capacity to produce or store* numbers using a random or sequential number generator.  As such, RPM did not employ an Automated Telephone Dialing System when it dialed Plaintiff's cell phone number.

Whether the RPM system employs a so-called predictive dialer is irrelevant.  Without a random or sequential number generator, the system, simply is outside the statutory definition of "automatic telephone dialing system."   Since the TCPA only

---

[15] Under RCW 19.86.090 a court may in its discretion increase the award of damages to an amount not to exceed three times the actual damages sustained provided that such increased damage award for violation of RCW 19.86.020 may not exceed $25,000.  *Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 855, 792 P.2d 142, 149 (1990).

[16] In fact, when asked in Interrogatories Numbers 8 and 9 whether Plaintiff suffered any wage loss, she responded "No."  See, Shafer Declaration, Exhibit 5.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 20
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

prohibits calls to cell phones using an ATDS, absent this proof, the TCPA claim fails and should be dismissed.

The court should also dismiss the Fifth Claim for Relief (WCPA Claim) because the plaintiff has not alleged any compensable WCPA injury.  She seeks only statutory damages and damages for alleged personal injury.

The WCPA does not allow recovery for either statutory damages or damages for personal injuries.  As such, plaintiff cannot prove the fifth element of a WCPA claim — compensable injury.  It too should be dismissed.

Dated this 7th day of November, 2013.

SIMBURG, KETTER, SHEPPARD
 & PURDY, LLP

By: /s/ Andrew D. Shafer
Andrew D. Shafer, WSBA No. 9405
Attorney for Defendant
999 Third Avenue, Suite 2525
Seattle, WA  98104
T:  206-382-2600
F:  206.223.3929
E: ashafer@sksp.com

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 21
 [Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929

**CERTIFICATE OF SERVICE**

I hereby certify that on the date below I electronically filed the foregoing MOTION FOR SUMMARY JUDGMENT, DECLARATION OF ANDREW D. SHAFER, DECLARATION OF CHRIS VITTOZ AND DECLARATION OF JAMES NOBLE with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jon N. Robbins, jrobbins@AttorneysForConsumers.com
Marshall Meyers, mmeyers@AttorneysForConsumers.com
Matthew J. Cunanan, matthew@dclglawyers.com

And I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

None.

DATED:          November 7, 2013.

SIMBURG, KETTER, SHEPPARD
& PURDY, LLP

/s/ Brian D. Carpenter
Brian D. Carpenter,
Paralegal

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT DISMISSING FOURTH AND FIFTH
CLAIMS FOR RELIEF- 22
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104
(206) 382-2600
FAX (206) 223-3929