# EXHIBIT "J"

EXHIBIT "J"

are unlikely to be enforced, or place an inordinate burden on the consumer.[49] Furthermore, the Ninth Circuit has confirmed that "Congress intended to regulate the use of [ATDSs] to communicate or try to get into communication with a person by telephone." *Satterfield v. Simon & Schuster*, 569 F.3d 946, 954 (9th Cir. 2009).  "Accordingly, the prohibition in the TCPA applies to phone calls placed to cellular telephone numbers even if the intended recipient does not answer the calls.  It is the mere act of placing the call that triggers the statute." *Filichio v. MRS Associates*, 2010 WL 4261442 *3 (S.D.FL., 2010) citing *Satterfield* at 954.

Defendant has not presented *any* tangible evidence establishing that Plaintiff even gave her cell-phone to TWC; further, *Defendant's* testimony establishes that Defendant *did not* get *any valid telephone number for Plaintiff,* from TWC, and that Defendant used skip-tracing to obtain Plaintiff's cell-phone.[50] Thus, there is more than sufficient evidence to create a genuine dispute of material fact as to whether Defendant had prior express consent to contact Plaintiff using an ATDS.

Also, Defendant's own documents and testimony establish that Defendant made "agent-less" "blaster calls" to Plaintiff's cell-phone. These technologies, as defined by Defendant itself, meet the definition of an ATDS because at the very least, they have the *capacity* to store *or produce* telephone numbers to be called, using a random or sequential number generator, and the have the capacity to dial such numbers.

### i. Defendant Placed Telephone Calls to Plaintiff's Cell-Phone Using an ATDS

An "automatic telephone dialing system" is equipment which has the <u>capacity</u>: 1) to store *or* produce telephone numbers to be called, using a random or sequential number generator; and 2) to dial such numbers. [51] Further, "[w]hen evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity 'to store or produce numbers to be called, using a random or sequential number generator.'" *Satterfield* at 951.

---

[49] TCPA, Pub.L. No. 102–243, § 11.
[50] Insent Citation
[51] 47 U.S.C. §227(a)(1)

### 1. Defendant's Equipment Meets the Definition of an ATDS.

The *Satterfield* court explained that "a system need not actually store, produce or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Id.* More importantly, the *Satterfield* court held that there was a genuine issue of material fact as to whether the equipment used by the defendant had such capacity where the plaintiff's expert opined that the system used by the defendant "'stored telephone numbers to be called and subsequently dialed those numbers automatically and without human intervention . . . [t]he use of stored numbers, randomly generated numbers or sequentially generated numbers used to automatically originate calls is a technical difference without a perceived distinction.. . .'" *Id.* at 952. To the contrary, the defendant in *Satterfield* relied on the testimony of the President of a third-party who actually transmitted the communications at issue; specifically, he testified that "system used was not capable of sending messages to telephone numbers not fed to the system by mBlox, nor was it capable of generating random or sequential telephone numbers." *Id.* Much like the defendant in *Satterfield*, Defendant merely relies on the testimony of its Corporate Representative, Nelson Wilson, in claiming that Defendant's dialing system does not meet the definition of an ATDS;

Further, in *Santander v. Nelson*, the court granted summary judgment for the *plaintiff*, where it was undisputed that the defendant used computer telephone software that "ha[d] capacity to (1) store telephone numbers and then call them; and (2) perform 'predictive dialing' and 'preview dialing.'" *Nelson v. Santander Consumer USA, Inc.,* 2013 WL 1141009 (W.D. Wis. 2013). In discussing the system used by the defendant in *Nelson*, as it applies to the definition of an ATDS, the court explained:

> In predictive dialing, the system times the dialing of numbers using an algorithm to predict when an agent will become available to receive the next call. To facilitate that method of dialing, defendant created lists of customer telephone numbers to be called on a particular day. Defendant's employees never called plaintiff by pressing numbers on a keypad. *Id.* at 5.

The dialing system used by Defendant, as described by Wilson, is similar to the system used by the defendant in *Nelson* to the extent that it involves the submission of a list of

numbers to be called, which in fact are then called without *any human* intervention. Thus, if the court in *Nelson* found that such facts are sufficient to grant summary judgment and hold that the defendant *did* use an ATDS, such similar characteristics in Defendant's system are more than sufficient to create a genuine disputer of material fact as to Defendant's use of an ATDS.

### 2. According to Plaintiff's Expert Defendant's Equipment Meets The Definition of an ATDs.

Plaintiff's designated-expert, Mr. Jeffrey A. Hansen ("Mr. Hansen"), opines that that Defendant used an automated telephone dialing system (ATDS) to place telephone calls to Plaintiff, or more specifically, that the characteristics of Defendant's system meets the definition of equipment that has the capacity to store or produce numbers to be called, using a random or sequential number generator, and the capacity to call such numbers.[52]

Mr. Hansen relied on the FCC's 2003 order, which defines an ATDS as "any equipment with the capacity to dial numbers without human intervention" including predictive dialers that which is "equipment that dials numbers and, when certain computer software is attached, also assist telemarketers," and the FCC Order 12-56, from May 22, 2012, which said that the definition of an ATDS "covers any equipment that has the specific capacity to generate numbers and dial them without human intervention whether or not the numbers called are randomly or sequentially generated or come from calling lists."[53]

Ultimately, the fact that Defendant can load numbers into its dialer and place "agent-less" calls *clearly indicates* that at the very least, Defendant's dialer has the *capacity* to store numbers to be called, randomly or using a sequential number-generator, and that it has the *capacity* to call such numbers. After all, Defendant loads numbers to be called, into its dialer, and those calls are later placed *without human intervention.*[54]

Finally, Defendant failed to clarify whether its dialer *has the capacity* to store or produce numbers to be called, using a random or sequential number, and by this very omission/failure to deny the capacity of its dialer to do so, Defendant admits that its dialer *does*

---

[52] Ex. N at ¶3.
[53] Ex. N. at ¶11-12
[54] Ex. N. at ¶10-12.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.**

*have the capacity,* to store or produce numbers to be called, using a random or sequential number generator, and that it can place such calls.

Ultimately, Mr. Hansen's testimony and the capacity of Defendant's Interactive Intelligence system to store and then dial numbers without human intervention is more than sufficient to create a genuine dispute of material fact as to whether Defendant used an ATDS when placing calls to Plaintiff's cell-phone.

### ii. Defendant Placed Telephone Calls to Plaintiff's Cell-Phone Without Prior Express Consent From Plaintiff

Defendant has not submitted *any evidence* to meet *its* burden of proving that Plaintiff provided Defendant with prior express consent to call her cell-phone using an ATDS. *In re Rules Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 564-565 (F.C.C. 2007 (The FCC noted "autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party" and "are permissible." However, the caller bears the burden to maintain evidence showing "prior express consent" was given.).

Defendant alleges that it is undisputed that Defendant had prior-express consent to call Plaintiff, *because* Plaintiff gave TWC consent to contact her on her cell-phone regarding account-related issues. Defendant's factual basis for such an argument is non-existent, as this allegation is heavily disputed by Plaintiff. [55] The only evidence that Defendant has in support of this allegation is deposition testimony, wherein, Plaintiff responded (to a hypothetical question) that she *assumes* that she *probably* gave her cell-phone number TWC, when asked "[h]ow would have gotten in Time Warner Cable's account records?"[56] Defendant also asked, "[w]hy would you give Time Warner Cable your cell phone number?" to which Plaintiff responded, "[b]ecause I had service with Time Warner Cable." [57] With the exception of Plaintiff's *assumption* that she *probably* gave TWC her number, Defendant has no proof that Plaintiff did in fact provide her number to TWC; Defendant has not produced any documents or

---

[55] (Disputed Fact #14-5)
[56] *Id.*
[57] *Id.*