Hon. John C. Coughenour
Note for Consideration: March 21, 2014

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WENDY JENDRYSIK,

                Plaintiff,

v.

RECEIVABLES PERFORMANCE
MANAGEMENT, LLC

                Defendant.

Case No.  2:13-cv-00559

**DEFENDANT'S MOTION TO STAY
PROCEEDING PENDING DISPOSITION
OF ADMINISTRATIVE PROCEEDINGS**

## I.    INTRODUCTION

Now that the parties have resolved all claims between them other than the TCPA claim, Defendant Receivables Performance Management, LLC ("RPM") moves the court for an order staying disposition of the fourth claim for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 based on the primary jurisdiction of the Federal Communications Commission over the remaining TCPA issues.

Five administrative proceedings currently pending before the Federal Communications Commission address the TCPA issues before this court. Before the parties resolved the FDCPA and invasion of privacy claims, it was not feasible to stay this entire proceeding. With resolution of those issues, staying this action is appropriate for the reasons stated below.

MOTION TO STAY PROCEEDING - 1
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

In 2002, the FCC instituted a rule making proceeding for implementing the TCPA. FCC Docket CG 02-278. Since that time, the Commission has received multiple petitions for declaratory orders and, literally, thousands of comments about the TCPA.[1] Currently the Commission is considering four petitions for declaratory relief and one petition for rule making. These five proceedings address questions at issue in this matter. Commission resolution of these issues will bring certainty to this proceeding.

The petitions for declaratory relief all seek answers to the following questions: (1) whether the TCPA applies to non-telemarketing calling activity (such as the debt-collection calls about which plaintiff complains); (2) whether dialing equipment must have a current capacity to generate and dial random or sequential numbers to be an ATDS (not a mere theoretical capacity if modified by hardware or software) and (3) whether a predictive dialer can satisfy the statutory definition of an ATDS if it lacks a random or sequential number generator capable of dialing phone numbers randomly or sequentially.

On January 31, 2014, the American Collectors Association filed a Petition to convene a formal rule making.[2] This rule making proceeding asks the FCC to adopt regulations which will: (a) explicitly exclude so-called predictive dialers from the definition of an ATDS unless the equipment also has a random or sequential number generator; (b) define the word "capacity" as meaning the actual ability to dial phone numbers without human intervention at the time calls were placed and not based on enhancements and programming changes which, if implemented *could* create a capacity to dial numbers randomly or sequentially.

An FCC ruling that the TCPA does not encompass non-telemarking calling activity disposes of Plaintiff's Complaint. Further, if the FCC concludes that dialing equipment must

---

[1]  Since 2008 alone, the Commission has received almost 3,900 comments (Shafer Declaration, ¶2).
[2]  See Exhibit 1 to Shafer Declaration.

MOTION TO STAY PROCEEDING - 2
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

have the *current capacity* to generate and dial random or sequential numbers, rather than a mere theoretical capacity (which even consumer smartphones have), that too defeats Plaintiff's claim. Finally, if the Commission adopts regulations which implement ACA's request, Plaintiff's claim will also fail. The Court should stay this case either under the primary jurisdiction doctrine or pursuant to the Court's inherent authority pending the FCC's rulings on these petitions.

The court should stay disposition of the fourth claim under the doctrine of primary jurisdiction for three reasons.[3] First, Plaintiff's allegations require resolution of whether the TCPA applies to non-telemarketing calls. Second, the claim requires disposition of the question whether equipment lacking the current capacity to generate and dial random or sequential numbers falls within the TCPA's scope. Third, if the Commission promulgates regulations as requested by the ACA in its rule making petition, whether RPM uses a so-called predictive dialer will no longer be dispositive. The question will remain whether the system it uses, and used at all times relevant, had the capacity to dial numbers randomly or sequentially. If the answer to this question is negative, then, under the proposed ACA regulation, RPM did not use an ATDS to call plaintiff. The ACA rule making petition does not seek to change the law. It merely seeks to clarify the Commission's ambiguous 2003 Declaratory Order.

The FCC has primary jurisdiction to determine, and in fact will determine, these very issues. For this reason the court should permit the agency to act. Regardless of the primary jurisdiction doctrine, the Court should invoke its inherent power to stay this action to avoid burdening the parties and the Court with further proceedings regarding claims the FCC's imminent rulings might dispose of entirely.

---

[3] RPM does not ask the court to stay disposition of the plaintiff's anticipated motion for attorney's fees under the FDCPA. It only seeks to stay litigating the fourth claim for alleged TCPA violations.

MOTION TO STAY PROCEEDING - 3
[Case No. 2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

## II.     FACTUAL BACKGROUND

### A.     Case Status.

Plaintiff alleges RPM called her cell phone without consent to demand payment for a cell phone debt she disputed owing. Plaintiff alleges RPM placed these calls to her cell phone using "an automatic telephone dialing system" as defined by the TCPA. According to Plaintiff, RPM's calls to her violated the TCPA's restrictions on placing calls to cell phones using an ATDS. This case is set for a three day jury trial on the TCPA claim commencing April 28, 2014.

RPM filed a motion for summary judgment dismissing the TCPA claim[4] based on its contention that its Noble System Corporation equipment did not contain a random or sequential number generator which would have given the equipment the capacity to dial phone numbers randomly or sequentially. In its order denying the motion, the court found an issue of material fact whether other software used by RPM, specifically, Microsoft Excel software, *could* interface with the Noble System equipment to satisfy the statutory requirement that an ATDS have a random or sequential number generator.[5]

At trial, RPM will argue for a jury instruction which will define an ATDS as a dialing system which, at the time RPM called Plaintiff, had the ability to dial phone numbers randomly or sequentially through the use of a random or sequential number generator. Based on her argument in opposition to the motion for summary judgment, RPM anticipates that plaintiff will seek an instruction which defines capacity in the more expansive way which would allow the jury to consider things RPM *could do* to its system to create a

---

[4] Dkt. No. 36.
[5] Dkt. No. 78.

MOTION TO STAY PROCEEDING - 4
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

number generator satisfying the TCPA definition of an ATDS. These opposing contentions are "ground zero" of the current proceedings before the FCC.

The outcome of the trial of plaintiff's fourth claim hinges on issues currently before the FCC. Those issues are: (a) whether collection calls, such as those at issue here (as opposed to sales solicitations) fall within the scope of the TCPA; (b) if the TCPA does apply to collection calls, the question will remain whether the system had merely a theoretical ability to randomly or sequentially dial phone numbers or whether it had a then present and actual ability to do so without RPM having to reprogram any of its systems.  This question falls squarely within the FCC's current inquiry into the meaning of the word "capacity" as used in the TCPA. Finally, as the ACA is asking the Commission in its petition, this court has to decide whether a so-called predictive dialer that lacks a random or sequential number generator capable of dialing numbers randomly or sequentially, is an ATDS?

**B.**     **The Petitions Pending Before the FCC.**

Four petitions for declaratory rulings currently before the FCC ask the agency to decide whether the TCPA applies to non-telemarketing calling activities, and whether equipment that lacks the current capacity for random or sequential number generation constitutes an ATDS.[6] See, *In re Communication Innovators' Pet. For Declaratory Ruling,* CG Dkt. No. 02-278 (June 7, 2012) ("CI Petition"); *In re GroupMe,* Inc. *Pet. for Expedited Declaratory Ruling & Clarification*, *CG Dkt.* No. 02-278 (Mar. 1, 2012) ("GroupMe Petition"); *In re YouMail, Inc.'s Pet. for Expedited Declaratory Ruling,* CG Dkt. No. 02-278

---

[6]  The Court may take judicial notice of information made "publicly available by government entities" and whose authenticity no party disputes, such as declaratory ruling petitions filed with the FCC, and subsequent filings by the FCC and other parties on the same docket.  *Daniels-Hall v. Nat'l Educ. Ass 'n,* 629 F.3d 992, 998-99 (9th Cir. 2010) (citing Fed. R. Evid. 201)).

MOTION TO STAY PROCEEDING - 5
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

(Apr. 19, 2013) ("YouMail Petition") and *In re Glide Talk, Ltd. Pet. for Expedited Declaratory Ruling,* CG Dkt 02-278 (October 28, 2013) ("Glide Talk Petition").[7]

Additionally, on January 31, 2014, the American Collectors Association filed a Petition for Rule Making, *Petition for Rule Making of ACA International*[8] in which the petitioner asks the FCC to adopt rules: (i) exempting the collection industry from a statute (the TCPA) which Congress enacted to curtail the abusive telemarketing sales solicitation practices that had evolved by 1990; (ii) formally excluding so-called predictive dialers from the definition of an ATDS unless the equipment had a random or sequential number generator which (iii) had the present capacity (when calls were placed) to randomly or sequentially dial phone numbers.[9]

*In re Communication Innovators.*   On June 7, 2012, Communication Innovators ("CI") filed a Petition for Declaratory Ruling with the FCC, seeking a declaration that "the Commission clarify, consistent with the text of the TCPA and Congressional intent, that predictive dialers that (1) are not used for telemarketing purposes and (2) do not have the current ability to generate and dial random or sequential numbers, are not 'automatic telephone dialing systems' . . . under the TCPA and the Commission's TCPA rules."

In requesting this ruling, the CI Petition points out that the TCPA does not define "capacity," and urges the FCC to "clarify that the definition of an autodialer under the TCPA reflects equipment that has a present capacity, such as having the current ability to generate and dial random or sequential numbers without additional modifications to the equipment."

---

[7] These four petitions are attached to the Shafer Declaration as Exhibits 2, 3, 4 and 5.
[8] Shafer Declaration, Exhibit 1.
[9] The FCC has interpreted the TCPA' s definition of ATDS to include equipment that dials lists of number without human intervention. *In re Rules & Regs. Implementing the TCPA,* 73 Fed. Reg. 6041, 6042 (Feb. 1, 2008). The FCC calls this equipment "predictive dialers." *In re Rules & Regs. Implementing the TCPA,* 68 Fed. Reg. 44144, 44161 (July 25, 2003). The 2003 Order left unresolved the question of whether the FCC still required a so-called predictive dialer to have a number generator to fall within the ATDS definition.

MOTION TO STAY PROCEEDING - 6
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

*Id.* at pg. 17. It argues the FCC "should not interpret capacity as encompassing any conceivable hardware or software modification to a device that would permit it to generate, store, and dial numbers randomly or in sequence." As the CI Petition notes, interpreting "capacity" broadly to include "any conceivable hardware or software modification" would potentially bring "mobile phones, smart phones, tablets, e-readers, and personal computers" within the TCPA's scope, as each can "theoretically be modified ... to randomly or sequentially generate and dial telephone numbers.".

The CI Petition also asks the FCC to distinguish between telemarketing and informational calls when it clarifies the meaning of capacity. In particular, the CI Petition contends, "today's predictive dialers-many of which have no current capacity to dial random or sequential numbers-are used for a number of innovative non-telemarketing purposes that simultaneously bring benefits to consumers and businesses such as allowing businesses with a legitimate need to contact a large number of specific accountholders or other consumers to do so accurately, efficiently, and cost-effectively." *Id.* at pgs. 18-19. As recently as January 3, 2014, Communication Innovators filed its "Comments of Communication Innovators[10] in support of the Petition for Declaratory Ruling of Glide Talk, Ltd for Expedited Declaratory Ruling," GC 02-278, filed October 28, 2013.[11] The Commission issued its Notice of Public Comment in the GlideTalk proceeding on December 2, 2013.[12]

*In re GroupMe.* In its Petition for Declaratory Ruling, filed on March 1, 2012, GroupMe also requested "that the Commission issue a ruling defining 'capacity' to encompass only equipment that, at the time of use, could, in fact, have autodialed random or sequential numbers without human intervention and without first being technologically

---

[10] Shafer Declaration, Exhibit 6.
[11] Shafer Declaration, Exhibit 5.
[12] Shafer Declaration, Exhibit 7.

MOTION TO STAY PROCEEDING - 7
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

altered."[13]  On July 24, 2012, the FCC issued a public notice seeking comment on GroupMe's petition. [14] FCC Pub. Notice, Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Expedited Declaratory Ruling from GroupMe, Inc. (July 24, 2012). [15] The deadline for comments was August 30, 2012, and September 10, 2012 for reply comments. That matter is pending.

_In re YouMail._  YouMail, Inc. filed its Petition for Declaratory Ruling on April 19, 2013. Like Communication Innovators and GroupMe, YouMail asks that "the Commission affirmatively state that only equipment that has the current capacity to store and produce telephone numbers to be called using a random or sequential number generator-and is currently being used for that purpose-should be considered an ATDS."[16] On June 25, 2013, the FCC issued a public notice seeking comment on YouMail's petition.[17] The deadline for comments was July 25, 2013, and for reply comments, August 9, 2013. That petition is also still pending.

_In re GlideTalk._  Glide Talk contends its messaging system does not have the capacity to generate random or sequential numbers and, therefore, should not be deemed an ATDS. GlideTalk's petition further asks the Commission to rule that only equipment that has random or sequential dialing capability at the time a call is placed should be deemed and ATDS. It too is pending.

_In Re Petition for Rule Making of ACA International._  In addition to these four petitions for declaratory orders, on January 31, 2014, ACA International filed a formal Petition for Rule Making. The ACA petition asks the FCC to adopt rules to clarify and make nationally uniform the rules regarding the use of automated dialing equipment by the

---

[13] Shafer Declaration, Exhibit 3 at 14.
[15] Shafer Decl. Exhibit 8.
[15] Shafer Decl. Exhibit 8.
[16] Shafer Declaration, Exhibit 4 at 11.
[17] Shafer Declaration, Exhibit 9.

MOTION TO STAY PROCEEDING - 8
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

collection industry. It seeks a rule exempting calls made by collection agencies under the FCC's authority contained in 47 U.S.C. (b)(2)(B)(i) and (ii) as well as the adoption of regulations which limits inclusion of predictive dialers falling within the scope of the definition of an ATDS to such equipment which contains a random or sequential number generator. The Commission has yet to act on this petition.

## III.   ARGUMENT

**A.   The Court Should Stay This Action Under the Primary Jurisdiction Doctrine Pending FCC Guidance That May Dispose of Plaintiff's Claims.**

Under the primary jurisdiction doctrine, courts may stay proceedings or dismiss a complaint without prejudice pending resolution of "an issue within the special competence of an administrative agency." *N. Cnty. Commc'ns Corp. v. Cal. Catalog & Tech.,* 594 F.3d 1149, 1162 (9th Cir. 2010) (quoting *Clark v. Time Warner Cable,* 523 F.3d 1110, 1114 (9th Cir. 2008)).

Courts invoke the primary jurisdiction doctrine "to advance regulatory uniformity, to answer a question ... within the agency's discretion, and to benefit from technical or policy considerations within the agency's ... expertise." *Charvat v. EchoStar Satellite, LLC,* 630 F.3d 459, 466 (6th Cir. 2010) (invoking primary jurisdiction doctrine in TCPA case). Courts may stay a case pending an agency determination,

> where there is (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to the statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.

*Davel Commc'ns, Inc. v. Qwest Corp.,* 460 F.3d 1075, 1086-87 (9th Cir. 2006).

This case satisfies all of these factors. The Court should stay this action pending the FCC's likely imminent ruling on the pending petitions. In fact, Judge Settle issued just such a ruling in *Hurrle v. Real Time Solutions, Inc.*, 3:13-cv-05765 (W.D.WA February 20,

MOTION TO STAY PROCEEDING - 9
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

2014). Hurrle is a national class action in which the plaintiff has alleged TCPA violations arising from certain debt collection activities by Real Time Solutions.

      1.   <u>Congress Granted the FCC Primary Jurisdiction to Resolve Whether the TCPA Applies to Non-Telemarketing Calls.</u>

Congress explicitly delegated to the FCC the power to implement and construe the TCPA. *Id.* § 227(b)(2). Specifically, the TCPA empowers the FCC to prescribe regulations under the Act to exempt certain types of commercial calls from the requirements of the Act, 47 U.S.C. §§227(b)(2)(B)(ii)(II) and (b)(2)(C); to intervene in suits filed by state attorneys general, 47 U.S.C. §227(g)(3) and to enforce the Act and its accompanying regulations. *See also Charvat*, 630 F.3d at 466-67. Congress vested the FCC with considerable authority to "implement and construe" the TCPA. *Charvat* at 466.

Consistent with that authority, the FCC has created a complex regulatory scheme governing telemarketing activity. It has done so by adopting new regulations as technologies and business practices evolve. *See, e.g., In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 132-133. *See, Fried v. Sensia Salon, Inc.*, 2013 WL 6195483, at Slip Op. 5 (S.D. Tex. Nov. 27, 2013). ["The FCC has regulatory power over this [telemarketing] industry and can respond to changes in the industry through regulations, reports and orders, declaratory rulings, and other available tools."]

Given the specific role Congress conferred on the FCC under the TCPA, the FCC occupies the best position to determine whether non-telemarketing activity falls within the TCPA's sphere, what "capacity" means under the TCPA and whether a predictive dialer must have a random or sequential number generator to satisfy the statutory definition of an ATDS. Resolving these questions requires the FCC to reconcile its prior rulings, as well as to interpret the TCPA. A ruling from the FCC (1) declaring non-telemarketing calling activity as outside the scope of the TCPA (either generally or because it does not meet the

MOTION TO STAY PROCEEDING - 10
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

TCPA's definition of an ATDS), or (2) declaring that "capacity" under the TCPA means current capacity (not a theoretical capacity if modified), could dispose of Plaintiff's claims before the parties and the court invest their time and energy in deciding whether this case is suitable for class treatment. Thus, as a matter of judicial efficiency and economy, the court ought to defer to the FCC proceedings currently under way.

2.   Regulating Non-Telemarketing Calls, Defining "Capacity" and "ATDS" Requires Agency Expertise and National Uniformity.

In enacting the TCPA, Congress intended to "promote a uniform regulatory scheme under which telemarketers would not be subject to multiple, conflicting regulations . . . . [and] to avoid burdensome compliance costs for telemarketers." *In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991*, 18 F.C.C.R. 14014 at 14083 (2003). "[T]hrough the application of the doctrine of primary jurisdiction, the courts and the FCC should be able to prevent ... significant inconsistent application of FCC rules . . . ." *So. Central. Bell Tel. Co. v. La. Pub. Serv. Comm 'n*, 744 F.2d 1107, 1118 (5th Cir. 1984), vacated on other grounds, 476 U.S. 1166 (1986).

In fact, courts have disagreed over what "capacity" means under the TCPA. For example, In *Hunt v. 21st Mortgage Corp.*, 2013 WL 5230061, at Slip Op. 3-4 (N.D. Ala. Sept. 17, 2013), the court concluded that "to meet the TCPA definition of an 'automatic telephone dialing system,' a system must have a present capacity, at the time the calls were being made, to store or produce and call numbers from a number generator." (Emphasis added.) In reaching its conclusion, the court refused to interpret "capacity" as broadly encompassing equipment with a theoretical capacity to store or produce randomly or sequentially generated numbers because "in today's world, the possibilities of modification and alteration are virtually limitless." *Id.* at 4. In contrast, in *Nelson v. Santander Consumer USA, Inc.,* 931 F.Supp.2d 919, 928-29 (W.D.WI. 2013), the court interpreted the definition

MOTION TO STAY PROCEEDING - 11
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

of ATDS broadly to encompass any equipment that could store or produce randomly or sequentially generated numbers when paired with the appropriate hardware or software. Nelson's expansive definition makes virtually every modern telephone an ATDS. To avoid its impact, we would almost have to return to the by-gone era of rotary phones.

To avoid adding to the case law confusion illustrated by the different approaches taken in *Hunt* and *Nelson,* RPM urges this court to adopt Judge Settle's rationale in *Hurrle v. Real Time Solutions, Inc.,* supra at 3,

> Telemarketing is one activity while collecting debt from known debtors seems to be a wholly separate activity. Whether the latter activity falls within the scope of the TCPA is currently being addressed by Congress and the FCC. The issue is clearly one of policy within those bodies, and guidance on the "capacity" of autodialing systems would further clarify the law that Hurrle seeks to enforce in this action.

See also, *Barahona v. T- Mobile US, Inc.*, 628 F.Supp.3d 1268, 1272 (W.D.WA. 2009). There, Judge Martinez stayed the proceeding holding,

> In view of the disparity between the cases cited by the parties, the Court finds that the interest of uniformity weighs heavily in favor of deferring to the expertise of the FCC under the primary jurisdiction doctrine. The FCC's determination....will likewise guide any decision by this Court regarding plaintiff's state law claims. Thus, use of the primary jurisdiction doctrine and referral to the FCC will avoid disparate or conflicting requirements for telecommunication providers, and promote uniformity.

The principle of uniformity applies with particular force here, as the TCPA is a 'strict liability" statute, subjecting defendants to potentially staggering monetary damages that could be based on a faulty reading of the statute. Accord, *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011).

MOTION TO STAY PROCEEDING - 12
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

Finally, the Commission should be permitted to clarify its 2003 Order regarding predictive dialers. The outcome of this case turns, in large part, on the resolution of that issue.

Permitting the FCC to speak first will avoid liability findings that may later turn out to be incorrect. See, *United States v. Western. Pac. R.R. Co*., 352 U.S. 59, 64 (1956) (allowing agency to decide issue first ensures "the limited functions of review by the judiciary are more rationally exercised").

3.  Plaintiffs' Claims Require the Court to Resolve Two Issues Currently Before the FCC – Whether RPM's System is an ATDS and whether the TCPA Applies to Non-Telemarketing Calls

To prove the TCPA claim, at a minimum Plaintiff must show RPM used an ATDS to call cell her phone without consent. 47 U.S.C. § 227(b)(l)(A)(iii). Plaintiff's claim that RPM used an ATDS raises two threshold issues currently before the FCC.

First, what is meant by capacity? Does it mean ability at the time the calls were made or does it encompass more? Does it extend to modifications to the system which, if made, would then have the ability to randomly and sequentially dial phone numbers?

Second, the court must decide whether the FCC's 2003 decision (holding that a predictive dialer is an ATDS), dispensed with the statutory requirement that the system have a random or sequential number generator capable of randomly or sequentially dialing phone numbers. This issue is currently before the FCC in all five of the proceedings summarized above.

Apart from this technical question, the FCC is wrestling with a broader policy issue, namely, whether the TCPA should even apply to the debt collection industry. Originally, it determined that debt-collection calls not directed to random or sequential numbers did not fall within the TCPA's definition of an ATDS. See *In re Rules & Regs. Implementing the*

MOTION TO STAY PROCEEDING - 13
[Case No. 2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

*Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752 (1992). In that ruling, the FCC recognized Congress passed the TCPA to protect consumers from unrestricted telemarketing practices, not non-telemarketing calling activities.

A few years later, the FCC confirmed the TCPA does not prohibit certain non-telemarketing calls because such calls, "[were] not directed to randomly or sequentially generate telephone numbers, but instead [were] directed to the specifically programmed contact numbers." *In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991,* 10 F.C.C.R. 12391 at 12400 (1995). In 2003, however, the FCC examined so-called predictive dialers. It concluded that because this equipment could place phone calls without "human intervention," they satisfied the ATDS definition under the TCPA and Commission regulation. *In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991,* 18 F.C.C.R. 14014 at 14093 (2003). In particular, the FCC ruled, "to be considered an 'automatic telephone dialing system,' the equipment need only have the capacity to store or produce telephone numbers." See p. 14092). The FCC reached this conclusion out of concern that technological changes had influenced telemarketers to use predictive dialers to call lists of numbers rather than to call random or sequential numbers. The FCC reaffirmed this position in a 2008 ruling. *In re Rules & Regs. Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559 (2008).

The FCC's 2003 and 2008 orders left dangling the question of whether a predictive dialer that lacked a number generator was an ATDS. It never considered the ongoing requirement that a number generator was required for a predictive dialer to be deemed an ATDS. This is exactly the confusion that the ACA Rule Making Petition seeks to remedy. Accordingly, the court should defer this determination to the Commission's rule making process.

MOTION TO STAY PROCEEDING - 14
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

Further, neither the TCPA nor the FCC has defined what "capacity" means-whether it includes non-telemarketing calls and calls placed from equipment that lacks the current "capacity" to store or produce randomly or sequentially generated numbers. 47 U.S.C. § 227(a)(l)(A). The anticipated FCC declaratory ruling on the *Communication Innovators*, *GroupMe* and *YouMail* petitions for declaratory orders will resolve whether debt-related calls (i.e., non-telemarketing calls) and calls placed from a dialer that lacks a current capacity to store or produce randomly or sequentially generated numbers fall within the TCPA's prohibitions. These petitions, and the GlideTalk Petition, will also resolve the question of whether a dialing system (even a predictive dialing system) that lacked the capacity to randomly or sequentially dial phone numbers is an ATDS.

For all of these reasons, the court should defer to the FCC. It should apply the doctrine of primary jurisdiction and stay this proceeding until the FCC has completed its work.

**B.      The Court Should Stay This Action Pursuant to the Court's Inherent  Authority.**

A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule does not require that the issues in such proceedings are necessarily controlling of the action before the court. *Leyva v. Certified Grocers of Cal., Ltd.,* 593 F.2d 857, 863-64 (9th Cir. 1979). Here, regardless of the primary jurisdiction doctrine, the Court should stay this case pursuant to its inherent case management authority.

Absent a stay, RPM will be forced to incur the burden and further expense of defending claims that the FCC's actions may render moot. The national need for uniformity in the application of this law justifies this court allowing the agency charged with administering the TCPA be given the time to act.

MOTION TO STAY PROCEEDING - 15
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

1    While this case is set for trial in a little more than a month, requesting this stay did

2    not make much sense while the FDCPA and invasion of privacy claims were pending. In the

3    interest of fairness to the Plaintiff, those issues would have been tried on schedule. It would

4    not have made economic sense to try Claims 1-3 and 5 (FDCPA and invasion of privacy)

5    only to return at a later date to try Claim 4. For this reason, while this motion comes late in

6    the proceeding, overriding factors of national uniformity justify staying trial of the Fourth

7    Claim until the FCC has finished its work.

8                                    **IV.    CONCLUSION**

9    For the foregoing reasons, RPM asks that the court stay this case under the primary

10   jurisdiction doctrine or pursuant to its inherent authority until the FCC rules on the pending

11   Petitions.

12   Dated this 6th day of March 2014.

13

14                                    SIMBURG, KETTER, SHEPPARD & PURDY, LLP

15

16                                    By: /s/ Andrew D. Shafer
17                                    Andrew D. Shafer, WSBA No. 9405
                                      Attorney for Defendant
18                                    999 Third Avenue, Suite 2525
                                      Seattle, WA  98104
19                                    T:  206-382-2600
                                      F:  206.223.3929
20                                    E: ashafer@sksp.com

21

22

23

24

25
MOTION TO STAY PROCEEDING - 16
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929

CERTIFICATE OF SERVICE

I hereby certify that on the date below I electronically filed the foregoing MOTION TO STAY PROCEEDING AND SUPPORTING DECLARATION OF ANDREW D. SHAFER with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jon N. Robbins, ecf@AttorneysForConsumers.com
Marshall Meyers, mmeyers@AttorneysForConsumers.com
Matthew J. Cunanan, matthew@dclglawyers.com
Russell S. Thompson, rthompson@attorneysforconsumers.com
David McDevitt, dmcdevitt@attorneysforconsumers.com

And I hereby certify that on March 7, 2014 I caused a paper copy of the Motion and supporting Declaration to be delivered to the judge by messenger,

Hon. John C. Coughenour
United States District Court Judge
700 Stewart St., Room 16229
Seattle, WA 98101-9906

And I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

None.

DATED:      March 6, 2014.

SIMBURG, KETTER, SHEPPARD & PURDY, LLP

/s/ Brian D. Carpenter
Brian D. Carpenter,
Paralegal

MOTION TO STAY PROCEEDING - 17
[Case No.  2:13-cv-00559]

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 Third Avenue, Suite 2525
Seattle, Washington 98104
(206) 382-2600
FAX (206) 223-3929