Judge John C. Coughenour

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| **WENDY JENDRYSIK**, | Case No. 2:13-cv-00559-JCC |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING DISPOSITION OF ADMINISTRATIVE PROCEEDINGS** |
| **RECEIVABLES PERFORMANCE MANAGEMENT, LLC,** | |
| Defendant. | |

## I.   Introduction.

After arguing in its motion for summary judgment that the Court should ignore the FCC's "predictive" dialer ruling because it violates *Chevron*—something no federal court has ever done—RPM urges that the Court must give the FCC "time to act" so the Court can benefit from additional agency expertise. The flaw in RPM's argument is that the FCC has *already ruled* on these issues. The pending petitions—one of which has been pending for two years—are merely rephrased questions which have been asked and answered, some more than once.

In 2008, the FCC affirmed its 2003 ruling regarding "predictive" dialers and clarified that they apply to debt collection calls. RPM's attempt to distinguish between dialing equipment's *current* and *potential* capacity is a red herring, as that distinction only matters under the FCC

Response to Motion to Stay- 1
Case No. 2:13-cv-00559-JCC

Weisberg & Meyers, LLC
3877 N. Deer Lake Rd
Loon Lake ,WA 99148
509-232-1882
866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

ruling if the equipment is not a predictive dialer, and RPM has admitted that their dialer is a "predictive" dialer. In any case, Plaintiff has already shown that RPM's equipment—in its current state and without the need for modification—can produce randomly generated numbers and call those numbers without human intervention. Staying proceedings therefore serves no benefit to this case, and the Court should deny RPM's motion.

**II.      Invoking the "primary jurisdiction doctrine" is inappropriate because the FCC has already ruled on these issues.**

The "primary jurisdiction doctrine" is only appropriately applied when the Court is reviewing new and novel questions. *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (courts may invoke the doctrine when they encounter a question "that should be addressed in *the first instance* by the agency") (emphasis added); *Davel Commun., Inc. v. Qwest Corp.,* 460 F.3d 1075, 1086 (9th Cir. 2006) (court may find it appropriate that the agency should have "initial decisionmaking responsibility" for certain questions).

Thus, it applies in certain situations that raise technical or policy questions that the agency has not yet considered. *See e.g.*, *Couser v. Pre-paid Leg. Services, Inc.*, 12-CV-2575-LAB-WVG, 2014 WL 197717 (S.D. Cal. 2014) (addressing "the liability of a software provider under the TCPA" for its role in the autodialing process). It does not apply to well-settled questions that an agency has already addressed. *Robinson v. Midland Funding, LLC*, 10CV2261 MMA AJB, 2011 WL 1434919, *5 (S.D. Cal. 2011) ("The FCC has already issued a declaratory ruling stating debt collectors who make autodialed or prerecorded calls to a wireless number are responsible for any violation of the TCPA.").

Response to Motion to Stay- 2
Case No. 2:13-cv-00559-JCC

Weisberg & Meyers, LLC
3877 N. Deer Lake Rd
Loon Lake ,WA 99148
509-232-1882
866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

**A.      The FCC has ruled that all calls—including debt collection calls—made to a cell phone without prior express consent violate the TCPA.**

RPM goes into the most depth describing the "CI Petition," which seeks a ruling that "predictive dialers that (1) are not used for telemarketing purposes and (2) do not have the current ability to generate[1] and dial random or sequential numbers, are not 'automatic telephone dialing systems.'" Doc. 85 at 6. RPM argues that the distinction between collection calls and telemarketing calls is an important unresolved issue, citing *Hurrle v. Real Time Resolutions, Inc.*, C13-5765 BHS, 2014 WL 670639 (W.D. Wash. 2014) ("Telemarketing is one activity while collecting debt from known debtors seems to be a wholly separate activity.").

But, contrary to the holding in *Hurrle*, the FCC has directly addressed this issue and answered in Plaintiff's favor. *See Robinson*, 2011 WL 1434919 at *5 ("The FCC [has] ruled predictive dialers used by debt collectors fall within the meaning of autodialers"); *In re Rules & Regs. Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559 (2008) (hereinafter "2008 Order").

In *Robinson*, the defendant made the identical argument that RPM makes here, urging the to stay the case to allow the FCC to rule on a petition that would determine "whether the TCPA's restrictions apply to debt collectors and, if so, whether the automatic dialing equipment used by debt collectors falls within the statutory definition of 'automatic telephone dialing system.'" *Id*. at

---

[1] Equipment does not need to have the capacity to *generate* random numbers—a legal issue about which RPM has repeatedly misled this Court. It needs only have the capacity to *store* randomly generated numbers and to dial them. *See Satterfield v. Simon & Schuster*, Inc., 569 F.3d 946, 951 (9th Cir. 2009) ("Accordingly, a system need not actually store, produce, *or* call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.") (emphasis added). For the purposes of this subsection, this is not important.

Response to Motion to Stay- 3  
Case No. 2:13-cv-00559-JCC

Weisberg & Meyers, LLC  
3877 N. Deer Lake Rd  
Loon Lake ,WA 99148  
509-232-1882  
866-565-1327 facsimile  
jrobbins@AttorneysForConsumers.com

*4. The petition actually addressed a tangential issue, but some comments to the notice of proposed rulemaking raised the same issues as the petitions RPM cites here. *Id*. Setting aside the fact that the issue was not squarely addressed, the court held that "[t]he FCC has already issued a declaratory ruling stating debt collectors who make autodialed or prerecorded calls to a wireless number are responsible for any violation of the TCPA." *Id*. at *5. Therefore, "the issue [was] not one of first impression and d[id] not implicate the FCC's authority to interpret the TCPA since [the FCC] has already ruled on the issue." *Id*. at *5.

It is unclear why the *Hurrle* court made the ruling that it did, but the FCC's 2008 order leaves no question that a debt collector is subject to the TCPA's autodialer restrictions. The order explained that autodialed calls to a debtor's wireless number were permissible only "if the wireless number was provided by the consumer to the creditor…during the transaction that resulted in the debt owed," because such call would be made under the "prior express consent" exception.[2] *See* 2008 Order at ¶ 10. The order went on to say:

> To ensure that creditors *and debt collectors* call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent.

*Id*. (emphasis added). Thus, a debt collector may violate the TCPA by using an autodialer to call a debtor's cell phone without the debtor's prior express consent, as RPM did here. In the very next paragraph, the FCC explained:

> We also reiterate that the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make *any call* to a wireless number in the absence of an emergency or the prior express consent of the called party. We note that this prohibition applies *regardless of the content of the call*…

---

[2] It is undisputed that Plaintiff did not provide her number during the transaction that resulted in the debt owed. *See* 50-1 at 18. RPM obtained it through "skip tracing." *Id*.

Response to Motion to Stay- 4
Case No. 2:13-cv-00559-JCC

Weisberg & Meyers, LLC
3877 N. Deer Lake Rd
Loon Lake ,WA 99148
509-232-1882
866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

*Id*. at ¶ 11 (emphasis added; footnotes omitted).

Eliminating any doubt that the FCC meant the "predictive" dialer ruling to apply to collection calls, it stated, in summarizing the next section on "predictive" dialers:

> [C]reditors *and debt collectors may use predictive dialers* to call wireless phones, provided the wireless phone number was provided by the subscriber in connection with the existing debt…. [W]here the subscriber has not made the number available to the creditor regarding the debt, *we expect debt collectors…to comply with the TCPA's prohibition on telephone calls using an autodialer* or an artificial or prerecorded voice message to wireless numbers.

*Id.* at ¶ 14 (emphasis added).

RPM's claim that "the FCC is wrestling with…whether the TCPA should even apply to the debt collection industry" is a fantasy. Doc. 85 at 13. As RPM finally concedes at the end of its motion, the FCC has addressed debt collection calls with respect to the TCPA and autodialing in nearly every major order it has issued since 1992. *Id*. at 13-14. Its latest ruling merely affirms that all autodialed calls, regardless of their purpose, are a nuisance to consumers who are often left on hold or met with "dead air" when they answer. *See* Section II(B)(1), *infra*.

The only ones wrestling with the issue are debt collectors who, to gain a competitive edge, use autodialers to call debtors' cell phones without prior express consent. *Cf. In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752 (1992) (concluding its discussion of debt collection calls by stating, "[i]n any event, to the extent any conflicts exist [between the FDCPA and the TCPA], compliance with both statutes is possible through the use of live calls.").

Response to Motion to Stay- 5
Case No. 2:13-cv-00559-JCC

Weisberg & Meyers, LLC
3877 N. Deer Lake Rd
Loon Lake ,WA 99148
509-232-1882
866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

**B.     Whether equipment must have a *current* capacity or a *potential* capacity to generate and call random numbers is factually and legally irrelevant here.**

The majority of the petitions RPM cites ask the FCC to clarify the term "capacity" in the definition of ATDS.  RPM argues that the Court should wait for a rule from the FCC on whether this means *current* capacity or *potential* capacity.  This argument is a red herring.

**1.     Any FCC declaratory ruling regarding "capacity" will necessarily refer only to equipment that is *not* a predictive dialer.**

RPM's argument that the Court should wait for the FCC's ruling on the issue of capacity is a non-starter, because this ruling will only apply to equipment that is not a "predictive" dialer. In 2003, the FCC made "predictive" dialers subject to the autodialing restriction, after finding that consumer privacy "had been reduced significantly by dead air and hang-up calls that result from predictive dialers." *In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, ¶ 28 (2003) (hereinafter "2003 Order). In its order, the FCC found:

> The record demonstrates that a predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers.

*Id*. at ¶ 131 (adding that "[t]he principal feature of predictive dialing software is a *timing* function, not number storage or generation").

Responding to the same argument RPM makes about the TCPA's plain-language, the FCC stated—over a decade ago—that:

> We believe the purpose of the requirement that equipment have the "capacity to store or produce telephone numbers to be called" is to ensure that the prohibition on autodialed calls not be circumvented. Therefore, the Commission finds that a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing system" and the intent of Congress."

*Id*. at ¶ 133 (citing 47 U.S.C. § 227(a)(1)).

Response to Motion to Stay- 6
Case No. 2:13-cv-00559-JCC

Weisberg & Meyers, LLC
3877 N. Deer Lake Rd
Loon Lake ,WA 99148
509-232-1882
866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

In other words, because RPM's dialer is a "predictive" dialer, it necessarily meets the definition of ATDS. Thus, any FCC analysis of the term "capacity" to come out of these petitions would only apply to equipment that is not a predictive dialer. The FCC determined that Congress intentionally made the definition expansive—requiring only a "capacity" and making equipment that could either produce *or merely store* randomly generated numbers subject to the restriction—and left it to the FCC to resolve future issues caused by technological change by issuing binding declaratory rulings and creating exemptions where necessary. *See* 47 U.S.C. § 227(b)(2)(C) (permitting the FCC to create exemptions for autodialed calls to wireless numbers, subject to any necessary privacy concerns).

So it is irrelevant whether RPM's equipment must contain a present, future, or potential capacity to do anything, or whether it has a random number generator. By virtue of the fact that it is a "predictive dialer," the FCC has found that it necessarily is "equipment which has the capacity to store *or* produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1).

In 2008, the FCC responded to a petition for declaratory ruling from the ACA wherein it "state[d] that debt collectors use predictive dialers to call specific numbers provided by established customers" and argued "that a predictive dialer meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." 2008 Order at ¶ 12. The ACA specifically raised the argument that "the Commission's determination that predictive dialers fall within the meaning of the statutory definition of 'automated telephone dialing equipment' was incorrect and conflicts with the language of the TCPA." *Id*. at ¶ 8.

Response to Motion to Stay- 7  
Case No. 2:13-cv-00559-JCC

Weisberg & Meyers, LLC  
3877 N. Deer Lake Rd  
Loon Lake ,WA 99148  
509-232-1882  
866-565-1327 facsimile  
jrobbins@AttorneysForConsumers.com

In response to the argument about random number generation, the FCC stood by its finding in 2003 and ruled that it would not find calls "permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists" as this "would be inconsistent with the avowed purpose of the TCPA and the intent of Congress in protecting consumers from such calls." *Id*. at ¶ 14 (noting that "ACA raise[d] no new information about predictive dialers that warrants reconsideration of [the 2003 Order's] findings").

So this is not an issue of first—or even second—impression. These petitions only have the ability to clarify how the FCC views equipment that is *not* a "predictive" dialer. Indeed, three of the four petitions are not about "predictive" dialers or call center technologies at all. *See* Doc. 85-3 (GroupMe petition about group text messaging service); Doc. 85-4 (YouMail petition about "virtual receptionist" software that sends automatic SMS messages in response to missed calls); Doc. 85-5 (GlideTalk petition about video messaging service).

While these petitions may raise different issues of first impression, they do not affect this case. And at least one district court in the Ninth Circuit has found it would be inappropriate to defer to the FCC under the "primary jurisdiction doctrine" to interpret the term "capacity." *See Pimental v. Google, Inc.*, C-11-02585-YGR, 2012 WL 1458179 (N.D. Cal. 2012) (denying stay because the "[i]nterpretation of ['prior express consent' and 'capacity'] do[es] not require the FCC's policy expertise or specialized knowledge and are matters safely within the conventional experience of judges").

Response to Motion to Stay- 8
Case No. 2:13-cv-00559-JCC

Weisberg & Meyers, LLC
3877 N. Deer Lake Rd
Loon Lake ,WA 99148
509-232-1882
866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

**2.    Plaintiff did *not* argue that RPM's equipment—if modified—could generate and call randomly generated numbers. She argued that it could do so at the time the calls were made.**

Even if the Court ignores the FCC's 2003 and 2008 Orders, a stay is still not warranted because the Court denied RPM's motion for summary judgment based on Plaintiff's argument about its equipment's *present* capacity. Contrary to RPM's assumption, Plaintiff does not plan or need to seek a jury instruction regarding what "RPM *could do to* its system." Doc. 85 at 4 (emphasis added). Plaintiff can succeed on her claim under RPM's incorrect statement of the law simply by showing what RPM *can do with* its system.[3]

Simply put, RPM's director of IT can turn on his computer, open up a Microsoft Excel spreadsheet, populate a "phone number" column with tens of thousands of randomly generated numbers, convert the spreadsheet to a .txt or text file, upload the text file to Noble Systems' FTP site, create a calling campaign from the Noble Systems Maestro software, begin blasting calls to those randomly generated numbers through its Noble Systems dialer equipment, and route the answered calls back to its call center agents to handle. *See* Doc. 63-1 at 55-60.

He would not need to install any additional software. He would not need any extra pieces of hardware. He can do all of these things from a single computer. He would not even need to leave his desk. And it probably wouldn't take more than a few minutes.

**3.    Straying from the FCC's rule on "predictive" dialers runs the risk of unintended consequences.**

Plaintiff understands the Court's concern "about how to apply a statute using the term 'dialing system' that was drafted before computers were ubiquitous and had their current

---

[3] Plaintiff plans to ask for a jury instruction regarding whether RPM uses a "predictive" dialer. Plaintiff's desire to cover her proverbial 'bases' by responding to all of RPM's arguments does not change the correct legal standard, from which no federal court has ever deviated.

Response to Motion to Stay- 9                              Weisberg & Meyers, LLC
Case No. 2:13-cv-00559-JCC                                 3877 N. Deer Lake Rd
                                                           Loon Lake ,WA 99148
                                                           509-232-1882
                                                           866-565-1327 facsimile
                                                           jrobbins@AttorneysForConsumers.com

capabilities." Doc. 78 at 4.  This is exactly why it should defer to the FCC under *Chevron*.

Plaintiff does not suggest that all hardware that can store a list of randomly generated numbers and then dial those numbers should be considered an ATDS. To the contrary, Plaintiff has argued that the Court should defer to the FCC's "predictive" dialer definition, because the statute is ambiguous, and because the FCC's finding that a predictive dialer is necessarily an ATDS is a reasonable construction of the statute.  This would eliminate the unintended consequences RPM warns of by ensuring that the only dialing systems that run afoul of the TCPA are "predictive" dialers.

On the other hand, RPM suggests looking only to the statute's plain-language, which, in this case alone, has been rephrased dozens of different ways.  *This* approach has the potential to turn every smartphone and tablet into an ATDS by creating precedent that district courts may ignore the binding nature of FCC orders—notwithstanding the language of the Hobbs Act, *see* Doc. 36 at 14—and create their own law regarding what qualifies as an ATDS.

C. **The ACA's petition for rulemaking does not invoke the "primary jurisdiction doctrine" because the effect of such regulations would be prospective only.**

RPM argues that the Court should stay this case because the ACA's petition for rulemaking—asking the FCC to provide a blanket exemption from the TCPA for debt collection—could moot Plaintiff's action. But the enactment of such a regulation "can only have prospective effect" because it goes against the clear language of its 2008 order. *Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005).  Even if it were proper to make such regulations retrospective in effect, the prospect of any new regulations being promulgated as a result of the petition is "an unlikely outcome when the FCC has already determined the TCPA applies to debt collectors and the definition of 'automatic telephone dialing system' includes 'predictive

Response to Motion to Stay- 10
Case No. 2:13-cv-00559-JCC

Weisberg & Meyers, LLC
3877 N. Deer Lake Rd
Loon Lake ,WA 99148
509-232-1882
866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

dialers.'" *Robinson*, 2011 WL 1434919 at *6.  What's more, the FCC had the statutory authority to create such exemptions when the FCC released its opinion in 2008.  *See* 2008 Order at fn. 10 (citing 47 U.S.C. § 227(b)(2)(C), which permits the FCC "by rule or order" to exempt autodialed calls to cell phones not charged for calls "subject to conditions" necessary to protect privacy rights).  The fact that the FCC chose not to do so in its 2008 Order, and has not done so since, is a strong indicator that it will not do so in the future.

The ACA cannot be allowed to create the grounds to stay its members' court battles—for years at a time—simply by filing a new, slightly changed petition for rulemaking.  Accordingly, the fact that the ACA has filed a petition seeking favorable regulations is no basis to stay this action, under the "primary jurisdiction doctrine" or under the Court's inherent authority, as the likelihood that the FCC will alter course is slim to none.

### III. Conclusion

The petitions before the FCC do not invoke the "primary jurisdiction doctrine."  The FCC has ruled on these issues. It has ruled on the issue of whether its previous ruling was incorrect. Nothing will stop the debt collection industry from inventing new ways to propose changes to the TCPA.  There will always be pending petitions requesting declaratory rulings or additional regulations favorable to the trade groups that file them.  That does not mean courts should stay their docket.  This situation does not warrant a stay under the Ninth Circuit test.  RPM's motion to stay should be denied.

Respectfully submitted this March 17, 2014.

/s/ Marshall S. Meyers
Marshall S. Meyers (*pro hac vice*)
Jon N. Robbins WSBA#28991
WEISBERG & MEYERS, LLC
Attorneys for Plaintiff

Response to Motion to Stay- 11
Case No. 2:13-cv-00559-JCC

Weisberg & Meyers, LLC
3877 N. Deer Lake Rd
Loon Lake ,WA 99148
509-232-1882
866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Mr. Andrew Shafer
    Simburg Ketter Sheppard & Purdy, LLP
    999 3rd Ave
    Suite 2525
    Seattle WA 98104
    ashafer@sksp.com

                           /s/ David McDevitt
                           David McDevitt

Response to Motion to Stay- 12
Case No. 2:13-cv-00559-JCC

Weisberg & Meyers, LLC
3877 N. Deer Lake Rd
Loon Lake ,WA 99148
509-232-1882
866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com